IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

SCOTT HAYMAKER, :
: C.A. No.
    Plaintiff, :
:
v. :
:
CITY OF JOHNSTOWN, CRAIG FOUST, :
Individually, and as former Chief of the City of :
Johnstown Police Department, and :
MELISSA KOMAR, as former City Manager of the :
City of Johnstown, :
: JURY TRIAL DEMANDED
    Defendants. :

## **COMPLAINT**

### Jurisdiction

1. This civil action is brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301, et. seq. ("USERRA").

2. This Court has subject matter jurisdiction over this matter pursuant to 38 USC § 4323(b) and 28 U.S.C. § 1331.

3. Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this litigation occurred in the Western District of Pennsylvania.

### Parties

4. Plaintiff, Scott Haymaker, is an adult individual who resides in South Carolina.

5. The Defendant, City of Johnstown, is a local municipality located in the Western District of Pennsylvania. At all times relevant hereto, Defendant Johnstown was an

"employer, " as that term is defined under USERRA, 38 U.S.C. §4303(4), and was likewise a covered entity under the PMAA, 51 Pa. Cons. Statute §7309.

6. Craig Foust is an adult individual residing in the Western District of Pennsylvania. At all times relevant, Foust was the Chief of Police of the City of Johnstown Police Department. At all times relevant hereto, Defendant Foust was an "employer, " as that term is defined under USERRA, 38 U.S.C. §4303(4), and was likewise a covered entity under the PMAA, 51 Pa. Cons. Statute §7309. He is sued in his individual capacity

7. Melissa Komar is an adult individual residing in the Western District of Pennsylvania. At all times relevant, she was the Manager of the City of Johnstown. At all times relevant hereto, Defendant Komar was an "employer, " as that term is defined under USERRA, 38 U.S.C. §4303(4), and was likewise a covered entity under the PMAA, 51 Pa. Cons. Statute §7309. She is sued in her individual capacity.

**Facts**

8. Mr. Haymaker joined the United States Army in 1988 and then the Pennsylvania National Guard in 1996. He has been promoted through the ranks and became a Sergeant Major in 2010, which is the highest ranking you can acquire as a non-commissioned officer.

9. In September 1997, Scott Haymaker was hired by the Johnstown Police Department (hereinafter "Police Department") as a patrol officer.

10. In 2004, Haymaker became a detective. He was promoted to the Police Department's Bureau of Criminal Investigations (BCI). This transition resulted in him becoming a member of the Southwestern PA Safe Streets Task Force. As part of

the Task Force, Haymaker was entitled to a take home vehicle and additional overtime.

11. In 2011, Haymaker was promoted to the position of Patrol Sergeant.

12. Throughout his career with the Police Department, Mr. Haymaker was a member of the National Guard.  As a result, he was periodically deployed.

13. For example, in June 2002-2003 Haymaker was deployed to Bosnia.

14. Between June 2007 and March 2008, Haymaker was deployed to Iraq as part of Operation Iraqi Freedom.

15. From June 2009 through February 2011, Haymaker took a military leave of absence to assume the position of Criminal Analyst for the National Guard Counter Drug Program.

16. From June 2012 through 2013 Haymaker was deployed to Bosnia.  From January 2015 to February 2017 he was deployed to Germany.

17. During his deployments to Germany, Haymaker was the Senior Enlisted Leader for a Two Star General responsible for over 400 Service Members, DoD civilians and their families in 39 different countries in Europe.

18. Subsequently, General Breedlove (R), the US European Command Commander, assigned Haymaker to serve as his Senior Enlisted Leader.  The first time in history that a member of the National Guard was selected as a Combatant Command Enlisted Leader.

19.  In connection with his military service, and service with the Johnstown Police Department, Haymaker attended and successfully completed numerous leadership

courses, as well as developing extensive leadership skills associated with his rank in the military.

20. Historically, Mr. Haymaker has had difficulties with the Defendant due to his military duty.

21. For example, the Chief of the Police, Craig Foust, repeatedly expressed frustration with Haymaker due to his military affiliations.

22. Foust repeatedly complained about how Haymaker's active duty deployments inconvenienced the Police Department. These comments were made to both Haymaker and other members of the police force.

23. Foust's animus towards Haymaker based upon his active duty commitments was evidenced by Foust's statement that Haymaker could either be a police officer or a soldier, but not both.

24. Foust also chastised Haymaker for purporting attempting to "recruit" fellow police officers into the National Guard.

25. Foust pressured other police officers into asking Haymaker to voluntarily resign his position with the BCI, on the basis that Haymaker's military-related absences were creating problems for the other detectives in the BCI.

26. Sergeant Grech also made comments that conveyed a bias against active military personnel. In one instance, she stated she was reluctant to hire a well-qualified applicant because he was a member of the National Guard and would be gone all the time like Haymaker.

27. In addition to statements evidencing a bias against Haymaker because of his military obligations, Haymaker was demoted and/or removed from consideration for several promotions due to such obligations

28. For example, after taking a military leave in 2011, Haymaker was transferred from the BCI back to the Patrol Division. Haymaker viewed this transfer as a demotion since it resulted in diminished opportunities for overtime and the loss of a take home vehicle.

29. Foust's act of involuntarily transferring Haymaker from BCI to Patrol was unprecedented. Previously, such transfers had been voluntary.

30. Haymaker filed a complaint regarding the transfer, and as a result, he was promoted to Patrol Sergeant.

31. In the fall of 2011 a vacancy was posted in the BCI. Haymaker applied and was selected for the position, but his selection was contingent on him voluntarily surrendering his promotion to Sergeant, which he did.

32. Similarly, when Haymaker returned from his deployment in June 2013, he repeatedly asked to be reassigned to the Task Force or to be promoted back to Sergeant. These requests were ignored.

33. In March 2014, Mr. Haymaker was transferred from the Detective Bureau back to the Patrol Division. Around this same time, Haymaker was also suspended for purportedly not following the chain of command and removed from the promotional exam list.

34. On July 21, 2014, Mr. Haymaker filed a USERRA complaint regarding his transfer from the Detective Bureau to the Patrol Division.

35. In August 2016, Haymaker applied for a Sergeant position with the Detective Bureau.

36. In September 2016, the City of Johnston agreed to promote Haymaker to Sergeant.

37. In December 2016, Haymaker's USERRA claim was closed as a result of a settlement agreement with the City of Johnstown.

38. In 2016, two separate Captain's positions became available in the Police Department. Initially, Haymaker was not permitted to take the Captain's examination. Haymaker contacted his USSERA investigator who required the City to allow him to take the exam. Haymaker then took the test and was ranked first among the candidates.

39. Mr. Haymaker was highly qualified for the position of Captain. He had many years of supervisory experience with the military and the Police Department.

40. Mr. Haymaker submitted his application for Captain, but was unsuccessful.

41. Instead, the Police Department selected Jeff Janciga and Chad Miller as Captains.

42. These individuals possessed less supervisory experience than Mr. Haymaker.

43. For example, Mr. Miller had previously worked as a School Resource Officer and had no supervisory experience with the Police Department.

44. In addition, Mr. Miller had taken the Sergeant's exam on at least two separate occasions and had failed both times.

45. Mr. Janciga had less overall supervisory experience than Mr. Haymaker, as well. While Janciga had been a sergeant longer than Haymaker, Haymaker's supervisory experience, including that gathered in the military was far more extensive.

46. When Haymaker applied for the Captain's position, he was the only candidate to have successfully completed the Police Officer Leadership Executive Course. (POLEX) which he had completed at Fort Indian Town Gap, in 2014.

47. Unlike Mr. Haymaker, Mr. Janciga and Mr. Miller either had no military affiliations or had been inactive during their employment with the Police Department.

48. In March 2017, Mr. Haymaker also applied for the Chief position when it became available after Foust's retirement.

49. Haymaker was not selected as Chief. In fact, he was not even interviewed for the position.

50. Instead, Robert Johnson, a former Lieutenant with the Pennsylvania State Police, was selected as the Chief of Police.

51. Mr. Johnson does not have any military affiliations, nor does he possess a college degree.

52. After he was denied these promotions, Mr. Haymaker filed a USERRA complaint with the Department of Labor (PA-2017-00001-20-G).

53. On June 14, 2017, Mr. Haymaker received notification from the U.S. Department of Labor that he had the right to seek private counsel or file a lawsuit against the City of Johnstown.

54. Mr. Haymaker retired from the Johnstown Police Department in April 2017, and he is currently an instructor at the Federal Law Enforcement Center.

7

## Causes of Action

### COUNT I – Haymaker v. City of Johnstown, Foust and Komar –
### Violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA)

55. Plaintiff incorporates the allegations in the preceding paragraphs as if fully stated herein.

56. Pursuant to 38 U.S.C. § 43 11, USERRA prohibits discrimination in employment against an individual on the basis of his or her military service. Specifically, 38 U.S.C. § 4311 provides that "[a] person who is a member of ... a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership application for membership, performance of service, application of service, or obligation."

57. As described in the preceding paragraphs, the City of Johnstown violated the abovementioned provisions of USERRA by denying Haymaker promotional opportunities to the position of Captain and/or Chief of the Johnstown Police Department due to his military service.

58. The USERRA violations were willful in that the City of Johnstown showed reckless disregard for whether its conduct was prohibited by the provisions of USERRA.

59. Because of the City of Johnstown's actions in violation of USERRA, Haymaker suffered a loss of earnings and other benefits.

WHEREFORE, Mr. Haymaker respectfully requests that this Court assume jurisdiction over this matter and award Mr. Haymaker all of the damages and remedies that are available to him under the law including, but not limited to, compensation for

all lost wages and benefits, liquidated damages, reasonable attorney's fees and litigation costs, and any other relief that may be just and proper.

### COUNT II -- Haymaker v. City of Johnstown, Foust and Komar – 38 U.S.C. § 4311 – Retaliation Claim

60. Plaintiff incorporates the allegations in the preceding paragraphs as if fully stated herein.

61. At all times relevant here to, the adverse personnel actions taken against plaintiff were in retaliation for protected activity taken by the plaintiff to seek or enforce rights under USERRA and/or on account of his participation in proceedings or investigations under the statute.

WHEREFORE, Mr. Haymaker respectfully requests that this Court assume jurisdiction over this matter and award Mr. Haymaker all of the damages and remedies that are available to him under the law including, but not limited to, compensation for all lost wages and benefits, liquidated damages, reasonable attorney's fees and litigation costs, and any other relief that may be just and proper.

### COUNT III– Claims Under 42 U.S.C. § 1983

### Haymaker v. Craig Foust, City of Johnstown and Melissa Komar Retaliation in Violation of the 1st Amendment to the Constitution.

62. Plaintiff incorporates the allegations in the preceding paragraphs as if fully stated herein.

63. During the course of his employment with the City of Johnstown, Haymaker has engaged activity protected by the First Amendment, including pointing out instances of wrongdoing.

64. Hence, Haymaker has had communication outside the scope of his duties of employment with appropriate city and state officials concerning matters of public concern arising from the operation of the Johnstown Police Department, including matters involving officers' abuse of sick time and conditions that affect the safety of the officers working for the force, as well as members of the public who had to enter or do business in the Police Department premises.

65. Haymaker also engaged in protected activity in pursuit of his USERRA claims, including filing a previous USERRA complaint, which resulted in a determination that the City of Johnstown had violated his USERRA rights.

66. Foust and Komar retaliated against Haymaker when they failed to appoint him to the position of captain, as a result of his protected activities.

67. Komar set policy for the City of Johnstown, as she was the acting City Manager, and had the authority to make policy-making decisions on behalf of the City.

68. The treatment of Haymaker in retaliation of his First Amendment rights violated 42 U.S.C. § 1983.

69. Haymaker requests this Court assume jurisdiction of this claim and award all damages available to him under 42 U.S.C. § 1983. Award damages as well as punitive damages against the individual Defendants.

### Count IV—Haymaker v. Foust and Komar—
### Pa. Common Law—Wrongful Refusal to Promote and/or Hire

70. Plaintiff incorporates the allegations in the preceding paragraphs as if fully stated herein.

71. Count IV is a claim against Defendants Foust and Komar.

72. The PMAA establishes the public policy of the Commonwealth of Pennsylvania that prohibits discriminating against employees or prospective employees on account of their military obligations.

73. On account of his military service, Defendants Foust and Komar violated the public policy established by the PMAA.

74. The conduct of the Defendants Foust and Komar was outrageous and carried out in reckless disregard of Plaintiff's right to be free from discrimination and/or retaliation on account of his reserve obligations.

75. As result of Defendants Foust and Komar's conduct, Plaintiff suffered embarrassment, humiliation, emotional distress, and damage to his reputation.

76. As a result of defendants Foust and Komar's conduct, plaintiff suffered lost wages, benefits and other remuneration, front pay, and loss of earning capacity.

WHEREFORE, Plaintiff requests that Defendants Foust and Komar be held jointly and severally liable for damages in excess of $50,000.00 including compensatory damages for embarrassment, humiliation, emotional distress, and damage to reputation that he suffered as a result of their unlawful conduct; and punitive damages.

**Plaintiff demands a jury trial.**

Respectfully submitted,

/s/Edward A. Olds
Edward A. Olds, Esquire
PA ID No. 23601
Jaimie George
PA ID No. 309368
OLD RUSS MARQUETTE & PEACE
1007 Mount Royal Boulevard
Pittsburgh, PA 15223
Phone (412) 492-8975
*ATTORNEY FOR PLAINTIFF*


/s/Timothy P. O'Brien
Timothy P. O'Brien
PA ID No. 22104
The O'Brien Law Firm
239 Fourth Avenue
Investment Building, Suite 2103
Pittsburgh, Pennsylvania 15222
(412) 232-4400 (Main)
*ATTORNEY FOR PLAINTIFF*